AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
FILED

MAR 24 2018

David J. Bradley, Clerk

| | |
|---|---|
| United States of America<br>v.<br>-02  Maria Luisa VILLALOBOS-Rodriguez<br>YOB 1996<br>Mexican Citizen<br><br>*Defendant(s)* | Case No. M-18-0629-M-02 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 23, 2018__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 952(a) and 21 USC 841(a)(1) | Knowingly and intentionally attempt to import into the United States from the United Mexican States approximately 4.36 kilograms of cocaine, Schedule II controlled substances the Controlled Substances Act, and did knowingly and intentionally possess with the intent to distribute approximately 4.36 kilograms of cocaine, Schedule II controlled substance under the Controlled Substance Act. |

This criminal complaint is based on these facts:

See Attachment "A"

✓ Continued on the attached sheet.

_____
Complainant's signature

Shane Petrosky, HSI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: March 24, 2018  4:04 pm

_____
Judge's signature

City and state: McAllen, Texas

Peter E. Ormsby, U.S. Magistrate Judge
Printed name and title

ATTACHMENT A

On March 23, 2018, at approximately 5:27 PM, a Chevrolet Malibu driven by Jesus Antonio BALDERAS-Vazquez along with passengers Sandra Karyme RAMIREZ and Maria Luisa VILLALOBOS-Rodriguez attempted to make entry into the United States via the Pharr, Texas Port of Entry. At primary inspection, Customs and Border Protection Officer (CBPO) Carissa Salinas obtained a negative declaration for narcotics and currency over ten thousand dollars ($10,000 USD) from all three occupants of the vehicle. CBPO Salinas questioned BALDERAS-Vazquez and Ramirez as to the purpose of their travel in the United States to which they both provided different responses. CBPO Salinas then noticed a bulge in the abdominal area of RAMIREZ who was the front seat passenger. CBPO Salinas referred the Chevrolet Malibu and all three occupants to secondary inspection.

At secondary inspection, CBPO Edgar Velasquez asked all of the occupants to step out of the Chevrolet Malibu in order to conduct a search of the vehicle. As the occupants exited the vehicle, CBPO Velasquez noticed the front seat passenger, RAMIREZ, kept adjusting her shirt and possibly had bulges along her waist area.

CBPO Roberto Olivares utilized his canine partner (Hydro) to conduct a free air sniff around RAMIREZ which resulted in a positive alert to the presence of a narcotic odor on RAMIREZ. CBPO Salinas then conducted a pat down of RAMIREZ and discovered two brick type packages concealed on her abdomen area beneath her shirt. A pat down of VILLALOBOS-Rodriguez revealed an additional two brick type packages concealed on her abdomen area beneath her shirt.

The two bricks discovered on RAMIREZ field tested positive for the properties of cocaine and weighted a combined total of 2.18 kilograms. The two bricks discovered on VILLALOBOS-Rodriguez field tested positive for the properties of cocaine and weighed a combined total of 2.17 kilograms. The total weight of the four bricks was 4.36 kilograms.

Homeland Security Investigations (HSI) Special Agents Shane Petrosky and Rene Santos conducted interviews of all three individuals and all three waived their Miranda Rights during the interview. RAMIREZ and VILLALOBOS-Rodriguez both stated that they received the bricks of narcotics at a house in Reynosa, Mexico and were going to be paid in cash upon the successful delivery of the narcotics to a man in the United States on the same day. RAMIREZ and VILLALOBOS-Rodriguez both stated they were aware they were carrying cocaine. RAMIREZ admitted to successfully crossing cocaine into the United States on one previous occasion while VILLALOBOS-Rodriguez admitted to successfully crossing cocaine into the United States on three previous occasions. RAMIREZ and VILLALOBOS-Rodriguez stated that once they crossed into the United States through the port of entry they would receive information about where to meet a man to deliver the cocaine bricks and in exchange the man would provide them with payment for their services.

BALDERAS-Vazquez stated that RAMIREZ and VILLALOBOS-Rodriguez approached him and asked him to drive them from Reynosa, Mexico to the United States. BALDERAS-Vazquez later accepted the offer and was paid two hundred dollars ($200.00 USD) by RAMIREZ and VILLALOBOS-Rodriguez after successfully driving them to the United States approximately one week prior to the date of his arrest. BALDERAS-Vazquez stated that he believed they were carrying either marijuana or cocaine. BALDERAS-Vazquez further stated that he was aware

ATTACHMENT A

both of his passengers had drugs strapped to their abdominal area at the time of his arrest and he was to be paid another two hundred dollars ($200.00 USD) for crossing them into the United States on this occasion.